# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KRISTA KAY EMMERT, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-14-205-JHP-SPS |

## REPORT AND RECOMMENDATION

The claimant Krista Kay Emmert requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on September 15, 1971, and was forty years old at the administrative hearing (Tr. 60). She has completed four years of college, and has worked as a drug and alcohol counselor, order clerk, travel agency manager, and travel consultant (Tr. 51). The claimant alleges she has been unable to work since October 13, 2010, due to a compression fracture at L1, atrophoderma, anxiety, lump on the back of her right leg, and a history of blood clots in both legs (Tr. 175).

## Procedural History

On March 1, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Doug Gabbard, II, held an administrative hearing and determined the claimant was not disabled in a written decision dated October 26, 2012 (Tr. 36-51). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of light work, *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk six hours in an eight-hour workday, sit for about six hours during an eight-hour workday, and occasionally stoop (Tr. 44). The ALJ thus concluded that the

claimant could return to her past relevant work as a drug and alcohol counselor, order clerk, and travel consultant, all sedentary skilled or semi-skilled positions, as well as her past work as a travel agency manager, a light skilled position (Tr. 51).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly assess her credibility, (ii) by failing to properly include limitations in her RFC, (iii) by failing to fully develop the record, and (iv) by improperly determining she could return to her past relevant work. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairment of lumbar degenerative disc disease, as well as the nonsevere impairments of obesity, gallbladder problems (post removal), deep vein thrombosis, left hip trochanteric bursitis, atrophoderma, and adjustment disorder with mixed anxiety and depressed mood (Tr. 38-44). The relevant medical evidence reveals that the claimant reported hip and thigh pain in 2009, but a left thigh MRI showed no abnormalities (Tr. 251). An MRI of the left hip revealed subtle changes in the distal anterior gluteus maximus muscle/tendon on the left close to the insertion site consistent with musculotendinous strain (Tr. 255). That same year, the claimant underwent a laparoscopic cholecystectomy, and developed a resultant DVT (Tr. 267, 273). She developed another DVT (a partial thrombus in a rather small vein) in December 2009, and was placed on anticoagulation again for six months (Tr. 281-282).

On July 27, 2010, the claimant underwent a nerve conduction/EMG study, which was normal bilaterally, and an MRI showed old changes of compression fractures (Tr. 320, 330). X-rays performed in September 2010 showed no significant degenerative changes, with an impression of trochanteric bursitis, which included a discussion of the importance of therapy in treatment (Tr. 345). The claimant also underwent a series of epidural steroid injections (Tr. 357-364, 538). On May 5, 2011, the claimant reported good pain relief in her legs but increased pain to her lower back, and she requested an adjustment to her medications (Tr. 540).

Records from Spiro Family Medical reveal the claimant presented with anxiety in October 2010, which the treatment provider described as "situational" due to a recent job loss (Tr. 432). A state reviewing physician found that the claimant's anxiety was a nonsevere mental impairment (Tr. 505-510). On June 2, 2011, the claimant presented with complaints of a rash after "weed whacking" a few days earlier, but described her pain as 0/10 (Tr. 533-535).

On May 4, 2011, a state reviewing physician found the claimant could perform medium work with no postural limitations (Tr. 521-527). On September 22, 2011, state physician Dr. Kenneth Wainner found the claimant could perform light work with only occasional kneeling, and frequent climbing, balancing, stooping, crouching, and crawling (Tr. 547-548).

On September 15, 2011, the claimant presented to the emergency room with abdominal pain and pain and swelling in her legs, accompanied by red streaks that had not been present the day before (Tr. 566, 574). She was assessed with abdominal pain

and chronic pancreatitis, and discharged in an improved condition, at which time she was noted to have no swelling in her extremities (Tr. 570). On December 30, 2011, the claimant reported increased pain and missing two days of work to her treatment provider, but did not want any medication changes (Tr. 613). A September 17, 2012 MRI of the lumbar spine revealed facet arthropathy in the lower lumbar spine and an old compression fracture at L1, with the findings stable since July 21, 2010 (Tr. 626).

In his written opinion, the ALJ thoroughly summarized the claimant's own testimony as well as the medical evidence in the record. At step four, the ALJ found that the claimant's allegations were not supported to the extent alleged. With regard to her back pain, he noted repeated lumbar diagnostic images showed a remote mild wedge compression fracture of L1 with no focal lumbar disc herniation or significant spondylosis, and early degenerative changes, but a normal EMG/nerve conduction study; her 2009 treatment for meralgia paresthetica, pain management, physical rehabilitation, and subsequent reports of only intermittent lower back pain that was not particularly severe; MRIs of the hip, thigh, and lumbar spine were normal and showed no disc pathology (Tr. 46-47). He further noted that a pain management specialist diagnosed her with lumbar spondylosis, displacement of lumbar intervertebral disc without myelopathy, other bursitis disorders, and limb pain, but that these diagnoses were inconsistent with the diagnostic studies (Tr. 47). He also noted that she underwent several steroid injections and maintained the same pain medication regimen (Tr. 47-48). Finally, he noted her testimony regarding swelling in her legs, but that such testimony was not reflected in the records (Tr. 48). He gave great weight to the opinion of the state reviewing physician

who found she could perform light work, but found that the postural limitations were not supported by musculoskeletal findings on examination, with the exception of occasional decreased range of motion (Tr. 48).

The claimant first contends that the ALJ erred in analyzing her credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 46). Use of boilerplate language is generally disfavored, *see, e. g., Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until

-7-

ability to work is assessed without regard to credibility, even though it often can't be."), but this was not the sum total of the ALJ's analysis of the claimants' credibility. Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) medical records reflecting that the claimant had a remote compression fracture and early degenerative changes, but good relief with pain management, contrary to her reports of disabling back pain; (ii) she testified to terrible hip pain, but diagnostic studies were normal and her trochanteric bursitis improved with treatment; (iii) she reported leg pain, but nerve conduction studies were normal, along with normal strength and gait; (iv) she reported swelling of her legs, but there were no complaints of this prior to when she quit work, and no indication as to the degree of swelling she reported; (v) there had been no recurrent DVT; (vi) she had lost her most recent job because she asked for a raise, rather than inability to perform the work; (vii) she had returned to work from July 2011 through March 2012 at the level of SGA; (viii) she reported she could not lift anything, but had been "weed whacking" in June 2011 (Tr. 50). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Second, the claimant asserts that the ALJ erred in his RFC assessment, specifically as to her back pain and mental impairment, and that the ALJ failed to properly account

for a 2010 record noting she had neuropathy that caused occasional sleepiness. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. He noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including the 2010 notation regarding neuropathy, which he noted was around the same time as an EMG/nerve conduction study that was normal (Tr. 41). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). The ALJ's treatment of the medical evidence in this case meets these standards. The undersigned Magistrate Judge finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that she could perform light work. When all the evidence is taken into account, the conclusion that the claimant could perform light work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Third, the claimant contends that the ALJ failed to develop the record with regard to her mental impairment, asserting without reference to any part of the record that she

clearly has a mental impairment that was not sufficiently addressed. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations." *Id.* at 361 [citations omitted].

Finally, the claimant contends that the ALJ failed to properly account for the demands of her past relevant work at phase two of the RFC assessment, and thus his conclusion that she could perform her past relevant work was not properly supported by evidence. With regard to phase two, the undersigned finds the ALJ's questioning of the claimant at the administrative hearing and the VE's testimony about the exertional and skill levels of the jobs was sufficient to establish the demands of the claimant's past work (Tr. 61-65, 78-80). *See, e. g.*, *Westbrook v. Massanari*, 26 Fed. Appx. 897, 903 (10th Cir. 2002) (finding that remand under *Winfrey* is appropriate only when the record is "devoid of even any mention of the demands of past relevant work[.]") [citation omitted] [unpublished opinion]. Even assuming *arguendo* the demands of the claimant's past work were insufficiently developed, the ALJ determined the claimant could return to her past relevant work as a drug and alcohol counselor, order clerk, travel agency manager, and travel consultant, *as these jobs were generally performed in the national economy*

(Tr. 51). This finding makes any further inquiry into the actual demands of the jobs unnecessary. *See*, *e.g.*, *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993) (noting that the ALJ shall consider "the claimant's ability to perform either . . . '[t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties . . . as generally required by employers throughout the national economy.'"), *quoting* Soc. Sec. Rul. 82-61, 1982 WL 31387, at *1 (1982). *See also Wise v. Barnhart*, 42 Fed. Appx. 331, 333 (10th Cir. 2002) ("[T]he issue is not whether claimant can return to her actual past job, but to the type of work she performed in the past.") [unpublished opinion], *citing Andrade*, 985 F.2d at 1051. Further, the ALJ made his own phase-three findings that the claimant's RFC did not preclude her performance of past work (Tr. 51). Although the ALJ clearly relied on the VE's testimony for his phase-three findings, *see Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("An 'ALJ may rely on information supplied by the VE at step four.'"), *quoting Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996), he did not "delegate the analysis to the [VE]." *Id*. ("The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis."). Thus, the ALJ's analysis of the claimant's past relevant work satisfied the requirements set forth in *Winfrey*.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because

the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**